1

2

3

4

5

6

7

8              IN THE UNITED STATES DISTRICT COURT

9           FOR THE EASTERN DISTRICT OF CALIFORNIA

10   PATRICK MICHAEL HAMER;
     DONNA LEE HAMER,

11
            Plaintiffs,                  No. CIV S-08-2269 KJM EFB PS

12
        vs.

13
     EL DORADO COUNTY, et al.,

14
            Defendants.                  FINDINGS AND RECOMMENDATIONS

15   _____/

16        This case, in which plaintiffs are proceeding *pro se*, is before the undersigned pursuant to

17   Eastern District of California Local Rule 302(c)(21).  *See* 28 U.S.C. § 636(b)(1).  Pending before

18   the undersigned are (1) defendants Jeff Neves, County of El Dorado, and Helen Bauman's

19   motion to dismiss plaintiff's third amended complaint, Dckt. No. 83; (2) plaintiffs' motion for

20   recusal, Dckt. No. 85; and (3) plaintiffs' motions to strike defendants' motion to dismiss, Dckt.

21   No. 86, 90.[1]  For the reasons stated herein, the undersigned recommends that the motion to

22   dismiss be granted and that the remaining motions be denied.

23   _____

24        [1] Although these filings are labeled "motions to strike," *see* Dckt. Nos. 86 and 90, they
     actually state the reasons for plaintiffs' opposition to the motion to dismiss.  The court will
25   consider the arguments in these documents in addressing the motion to dismiss.  However, the
     plaintiffs "motions to strike" must be denied.  No basis has been provided for striking defendants
26   motion to dismiss.

I.      BACKGROUND

On October 20, 2008, plaintiffs filed a 132-page first amended complaint.  Dckt. No. 5. Defendants County of El Dorado, Vern Pierson, Dick Jones, Worth Dikeman, Ray Nutting, Helen Bauman, Brenda Bailey, Jeff Neves, Fred Kollar, and Dan Johnson's (the "County defendants"), Bob Anderson, Ted Gaines, and Steve Davey moved to dismiss that complaint on various grounds.  Dckt. Nos. 6, 8, 28.  Defendants moved to dismiss and on June 9, 2009, the undersigned granted those motions and gave plaintiffs thirty days to file a second amended complaint that conformed to directives set forth therein and the pleading requirements set forth in Federal Rule of Civil Procedure ("Rule") 8(a).  Dckt. No. 34.

Plaintiffs filed a second amended complaint on July 9, 2009.  Dckt. No. 45.  The claims stated therein stemmed generally from an alleged dispute between plaintiffs and their former neighbor, defendant David Randall, and from the other defendants' alleged failure to protect plaintiffs from Randall.  *Id.*  Plaintiffs contended, *inter alia*, that defendants' failure to protect plaintiffs (or to apprehend Randall for his allegedly criminal activities) was in retaliation for complaining about defendants' conduct.  *Id.*  Plaintiffs asserted various claims for relief, including RICO, 18 U.S.C. § 1962; state law negligence; 42 U.S.C. § 1983 conspiracy to deprive rights; First Amendment; Fourth Amendment; Fourteenth Amendment; Cal. Civ. Code § 1708.7; and intentional infliction of emotional distress.  *Id.*

The defendants again moved to dismiss, and on February 19, 2010, the undersigned issued findings and recommendations ("F&Rs"), recommending that defendants Gaines, Davey, and Brown be dismissed with prejudice from the action; that plaintiffs' First Amendment claims, Fourteenth Amendment due process claims for failure to enforce restraining orders, defamation claims, RICO claims, and § 1983 claims against defendants Anderson and Randall be dismissed without leave to amend; that plaintiffs' § 1983 conspiracy claims, § 1983 claims against El Dorado County and Neves, and intentional infliction of emotional distress claim be dismissed with leave to amend; and that the remaining claims and defendants be dismissed with leave to

amend pursuant to Rule 8 and for failure to comply with the requirements set forth in the June 9, 2009 order.  Dckt. No. 75.

On March 19, 2010, the district judge adopted the F&Rs in full and dismissed the claims and defendants as set forth in the February 19 F&Rs.  Dckt. No. 78.  The March 19 order provided plaintiffs leave to amend the complaint "one final time as to the claims and defendants discussed in the magistrate judge's findings and recommendations."  *Id.* at 2.  Plaintiffs then sought reconsideration of the March 19 order, and the district judge denied that motion.  Dckt. Nos. 79, 81.

Thereafter, plaintiffs filed a third amended complaint.  Third Am. Compl. ("TAC"), Dckt. No. 82.  The third amended complaint names the County of El Dorado, former El Dorado County Sheriff Jeff Neves, and El Dorado County Supervisor Helen Bauman, and Does 1-40 as defendants and asserts nine claims for relief: (1) retaliation for exercising First Amendment rights (against Neves, Bauman, and Does 1-40); (2) conspiracy to deprive rights pursuant to 42 U.S.C. § 1983 and California law (against Neves, Bauman, and Does 1-40); (3) supervisory defendants in individual capacity pursuant to 42 U.S.C. § 1983 (against Does 1-40); (4) final policymaker acts pursuant to 42 U.S.C. § 1983 (against Neves and Bauman); (5) unconstitutional policies and practices pursuant to 42 U.S.C. § 1983 (against Neves, Bauman, El Dorado County, and Does 1-40); (6) breach of fiduciary duty (against Bauman and Does 21-40); (7) libel per se (against Bauman, El Dorado County, and Does 1-40); (8) negligence (against all defendants); and (9) tortious interference (against all defendants).  *Id.*  The complaint once again alleges that defendants ignored the criminal acts of plaintiff's neighbor, David Randall, and were vindictive and retaliatory when plaintiffs complained about their conduct.  *Id.* ¶ 1.  Plaintiffs also allege that they were denied police services, code enforcement services, and the right to political discourse with their local representatives, in violation of the Equal Protection Clause.  *Id.*

////

////

Defendants County of El Dorado, Neves, and Bauman ("defendants") now move to dismiss plaintiff's third amended complaint.  Dckt. No. 83.  Additionally, plaintiffs move to recuse the undersigned and Judge England from this action.  Dckt. No. 85.

II.     MOTION TO DISMISS

A.     Standards

To survive dismissal for failure to state a claim pursuant to Rule 12(b)(6), a complaint must contain more than a "formulaic recitation of the elements of a cause of action"; it must contain factual allegations sufficient to "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  "The pleading must contain something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action." *Id*. (quoting 5 C. Wright & A. Miller, *Federal Practice and Procedure* § 1216, pp. 235-236 (3d ed. 2004)).  "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Twombly*, 550 U.S. at 570).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*.  Dismissal is appropriate based either on the lack of cognizable legal theories or the lack of pleading sufficient facts to support cognizable legal theories. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

In considering a motion to dismiss, the court must accept as true the factual allegations of the complaint in question, *Hospital Bldg. Co. v. Rex Hosp. Trs.*, 425 U.S. 738, 740 (1976), construe the pleading in the light most favorable to the party opposing the motion, and resolve all doubts in the pleader's favor. *Jenkins v. McKeithen*, 395 U.S. 411, 421, *reh'g denied*, 396 U.S. 869 (1969).  The court will "'presume that general allegations embrace those specific facts that are necessary to support the claim.'" *Nat'l Org. for Women, Inc. v. Scheidler*, 510 U.S. 249, 256 (1994) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)).  The court may consider facts established by exhibits attached to the complaint. *Durning v. First Boston Corp.*,

815 F.2d 1265, 1267 (9th Cir. 1987).  The court may also consider facts which may be judicially noticed, *Mullis v. U.S. Bankr. Ct.*, 828 F.2d at 1388, and matters of public record, including pleadings, orders, and other papers filed with the court.  *Mack v. South Bay Beer Distribs.*, 798 F.2d 1279, 1282 (9th Cir. 1986).

Pro se pleadings are held to a less stringent standard than those drafted by lawyers. *Haines v. Kerner*, 404 U.S. 519, 520 (1972); *Bretz v. Kelman*, 773 F.2d 1026, 1027 n.1 (9th Cir. 1985).  However, the court's liberal interpretation of a pro se litigant's pleading may not supply essential elements of a claim that are not plead.  *Pena v. Gardner*, 976 F.2d 469, 471 (9th Cir. 1992); *Ivey v. Bd. of Regents of Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982). Furthermore, "[t]he court is not required to accept legal conclusions cast in the form of factual allegations if those conclusions cannot reasonably be drawn from the facts alleged."  *Clegg v. Cult Awareness Network*, 18 F.3d 752, 754-55 (9th Cir. 1994).  Neither need the court accept unreasonable inferences, or unwarranted deductions of fact.  *W. Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981).  A pro se litigant is, however, entitled to notice of the deficiencies in the complaint and an opportunity to amend, unless the complaint's deficiencies could not be cured by amendment.  *See Noll v. Carlson*, 809 F.2d 1446, 1448 (9th Cir. 1987).

B.    Plaintiff's Claims

1.    First Amendment (First Claim for Relief; Against Neves, Bauman, and Does)

Defendants Bauman and Neves move to dismiss plaintiffs' First Amendment claim, arguing that the claim is barred by the March 19, 2010 order, which dismissed plaintiffs' First Amendment claims with prejudice.  Dckt. No. 83-1 at 4 (citing Dckt. No. 78).

As defendants correctly point out, plaintiffs' First Amendment claim was dismissed with prejudice in the March 19 order.  Dckt. No. 78.  The February 19 F&Rs, which were adopted in full in the March 19 order, noted that the second amended complaint only alleged First Amendment claims against three defendants (Gaines, Davey, and Brown) who were dismissed from the action with prejudice on alternative grounds.  Dckt. No. 75 at 10.  The F&Rs went on to

find that "to the extent plaintiffs' First Amendment claims are asserted against the other defendants, they should also be dismissed without leave to amend." *Id.* The F&Rs noted that "[p]laintiffs allege that they were retaliated against for exercising their First Amendment rights and that their right to petition the government was violated by defendants' failure to enforce their restraining orders against Randall, by defendants' failure to obtain a criminal conviction against Randall, and by defendants' failure to keep plaintiffs abreast of all matters and/or to allow them to testify at Randall's criminal case." *Id.* However, the F&Rs found that "[a]lthough plaintiffs [were] dissatisfied with the manner in which defendants handled plaintiffs' disputes with Randall and defendants' failure to convict Randall, and although plaintiffs complained about those things to defendants, the First Amendment does not impose any affirmative obligation on the government to respond to the petitions raised by individual citizens, does not guarantee that citizens' speech will be heard, and does not require that every petition for redress of grievances be successful." *Id.* (citing *Smith v. Ark. State Highway Employees, Local 1315*, 441 U.S. 463, 464-65 (1979) ("The First Amendment right to associate and to advocate 'provides no guarantee that a speech will persuade or that advocacy will be effective.' . . . The public employee surely can associate and speak freely and petition openly, and he is protected by the First Amendment from retaliation for doing so. . . . But the First Amendment does not impose any affirmative obligation on the government to listen, to respond or, in this context, to recognize the association and bargain with it.")); *DeGrassi v. City of Glendora*, 207 F.3d 636, 647 (9th Cir. 2000) ("the First Amendment does not guarantee that citizens' speech will be heard").

Plaintiffs argue that their retaliation claim in their third amended complaint is not based upon a refusal to allow them to be heard, but upon being heard and then subjected to retaliation for exercising their right of free speech. Dckt. No. 89 at 2, 3. Specifically, plaintiffs contend that their complaint "is to stop retaliation and vindicate the constitutional violations done by defendants for their exercising Free Speech." *Id.* at 2. They argue that "defendants retaliated against [them] for complaining to other officials about their negligence as officials." *Id.* at 11.

Plaintiffs contend that the conduct constituting retaliation was not a "failure to arrest people," or a "failure to hear" plaintiffs' speech, but rather was defendants' conduct of "arrest[ing] criminals and releas[ing] them to assault his accusers because they complained to defendants peers causing them damages, their motive for vindictive animus and retaliation." *Id.* at 2, 3.  Plaintiffs contend that they contacted Bob Berger, an El Dorado County Republican Party Committee member, and explained that defendants were "ignoring a public safety issue," and that Mr. Berger then contacted Bauman's office about the issue.  *Id.* at 3, 4.  Plaintiffs allege that Bauman's office "responded by falsely libeling plaintiffs, stating that her county had 'arrested' plaintiffs in an overt but ignorant attempt to recruit Mr. Berger into a conspiracy to believe that the plaintiffs were El Dorado County criminal defendants that were under 'numerous arrests.'"  *Id.* at 4.  Plaintiffs contend that "[o]ne day after Bauman was caught lying, in an email dated September 26, 2007 from [Bauman's] office, Mr. Berger received an apology by the Secretary Brenda Bailey (Exhibit A2) for the fraudulent deception that she, at 'Bauman's directions'" emailed to Mr. Berger.  *Id.* at 5.  Essentially, plaintiffs contend that Bauman "create[d] false arrest reports for plaintiffs."  *Id.* at 6.  Plaintiffs contend that the emails from Bailey, Exhibits A1 and A2 to plaintiffs' complaint, evidence "an express policy that county officials inform state and county elected officials, State employees, County employees that plaintiffs . . . intend to mislead officials because they are 'arrested' 'numerously' as criminal defendants not to be trusted," and is plaintiffs' "direct proof of animus, conspiracy, and intent to set policy."  *Id.* at 9, 17; TAC ¶ 1.  Plaintiffs allege that because they "exposed the negligence about [El Dorado County] officials, the officials became outraged and this was the vindictive animus that is required in this 1983 suit."  Dckt. No. 89 at 19; TAC ¶ 32.

Although plaintiffs expressly contend that they have not alleged a cause of action for "failure to protect" them from private violence or for "failure to enforce a restraining order," *id.* at 17, plaintiffs do allege that defendants failed to protect them from Randall, who plaintiffs allege is mentally ill, and that the only rational basis for doing so was as "a reward for stalking

the plaintiffs, more vindictive animus and extreme malice." *Id.* at 6, 7; TAC ¶¶ 15, 24, 28, 29. Plaintiffs further contend that defendants were "deliberately indifferent" to plaintiffs' safety. *Id.* at 15; TAC ¶¶ 15, 50, 60. In their third amended complaint, plaintiffs specifically allege that defendants violated plaintiffs' rights by falsely accusing them of having been arrested; denying plaintiffs "their constitutional right to have police services, code enforcement services and political discourse with plaintiffs' elected representatives administered in a non-discriminatory manner"; and by intentionally treating them differently from other crime victims. TAC ¶¶ 1, 15, 16, 18, 21, 52, 53.

The First Amendment forbids government officials from retaliating against individuals for speaking out. *Hartman v. Moore*, 547 U.S. 250, 256 (2006); *see also Gibson v. United States*, 781 F.2d 1334, 1338 (9th Cir. 1986). "To recover under § 1983 for such retaliation, a plaintiff must prove: (1) he engaged in constitutionally protected activity; (2) as a result, he was subjected to adverse action by the defendant that would chill a person of ordinary firmness from continuing to engage in the protected activity; and (3) there was a substantial causal relationship between the constitutionally protected activity and the adverse action." *Blair v. Bethel School Dist.*, 608 F.3d 540, 543 (9th Cir. 2010) (citing *Pinard v. Clatskanie School Dist. 6J*, 467 F.3d 755, 770 (9th Cir. 2006)).

Here, plaintiffs' First Amendment retaliation claim fails because plaintiffs have not alleged, and do not appear to be able to allege, that they were "subjected to adverse action by the defendants that would chill a person of ordinary firmness from continuing to engage in the protected activity." Additionally, plaintiffs' First Amendment retaliation claim fails because plaintiffs have not alleged, and do not appear to be able to allege, that there was a substantial causal relationship between their complaints about defendants' allegedly negligent conduct and any "adverse action" plaintiffs purported to suffer. In fact, it is unclear what "adverse action," if any, plaintiffs are complaining about. *See Peoples v. Schwarzenegger*, 2010 WL 4296667, at *1 (9th Cir. Oct. 29, 2010) (finding that the district court properly dismissed plaintiff's "retaliation

claim because his conclusory allegations did not connect any defendant's alleged misconduct with the alleged infringement of his First Amendment rights."); *see also Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989) (conclusory allegations of retaliatory motive insufficient); *Rizzo v. Dawson*, 778 F.2d 527, 531 (9th Cir. 1985) (to state a claim for retaliation, defendant's conduct must infringe on plaintiff's protected activity).

To the extent plaintiffs allege that the emails from Bailey, Exhibits A1 and A2 to plaintiffs' complaint, which plaintiffs contend evidence defendants' "policy that county officials inform state and county elected officials, State employees, County employees that plaintiffs . . . intend to mislead officials because they [have been] arrested [numerous times and are therefore] criminal defendants not to be trusted," amount to an adverse action, the allegations are insufficient.  As an initial point, the emails do not say what plaintiffs contend they say.  *See Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1555 n.19 (9th Cir. 1990) (where the complaint incorporates exhibits, the court should ignore the allegations in the complaint if they are in conflict with facts set forth in the exhibit).  Although Ms. Bailey's initial email to Mr. Berger states that plaintiffs had been arrested more than once, Exhibit A1, the second email from Ms. Bailey, Exhibit A2, states that the information regarding plaintiffs' arrests was the result of a "miscommunication" between Ms. Bailey and the El Dorado County Sheriff's Department. TAC, Exs. A1, A2.  Nothing in the emails indicates that defendants Bauman or Neves had anything to do with the miscommunication regarding plaintiffs' arrests or that defendants had a "policy" of informing other local government officials that plaintiffs had been arrested.

More importantly, plaintiffs have not shown that anything in the emails amounted to an "adverse action that would chill a person of ordinary firmness from continuing to engage in the protected activity" or that the defendants named in this action had any role in drafting or reviewing the emails, or communicating with Ms. Bailey about whether plaintiffs had been arrested.  Finally, plaintiffs have not alleged, and appear incapable of alleging beyond a conclusory and speculative level, that there was a substantial causal relationship between their

complaints about defendants' allegedly negligent conduct and the emails sent by Bailey.  Apart

from conclusions and speculation, plaintiffs have not alleged facts demonstrating that the false

accusation that plaintiffs had been arrested was retaliatory in nature and/or that plaintiffs'

complaints about defendants' conduct *caused* Ms. Bailey to make that false accusation.  In short,

the complaint does not contain factual matter sufficient to satisfy *Iqbal*.  129 S. Ct. at 1949.

Plaintiffs have generally alleged that defendants failed to protect plaintiffs, were

deliberately indifferent to plaintiffs' safety, and/or failed to provide plaintiffs with police

services, code enforcement services and political discourse with plaintiffs' elected

representatives administered in a non-discriminatory manner.  To the extent plaintiffs intend to

say that each of these allegations, if true, are sufficient to establish an adverse action, they have

not alleged, beyond mere speculative conclusions, specific facts showing that defendants

actually *did* fail to protect them and/or fail to provide them with police services, code

enforcement services and political discourse with their elected representatives.[2]  Moreover,

plaintiffs have not alleged that any of the conduct by defendants prevents them from speaking

out about defendants' conduct or that it would chill a person of ordinary firmness from

continuing to speak out.  *See Blair v. Bethel School Dist*., 608 F.3d 540, 544 (9th Cir. 2010)

("[D]e minimis deprivations of benefits and privileges on account of one's speech do not give

rise to a First Amendment claim.  Rather, for adverse, retaliatory actions to offend the First

Amendment, they must be of a nature that would stifle someone from speaking out.  The most

familiar adverse actions are "exercise[s] of governmental power" that are "regulatory,

proscriptive, or compulsory in nature" and have the effect of punishing someone for his or her

speech.") (citing *Laird v. Tatum*, 408 U.S. 1, 11 (1972)).

////

---

[2]  Indeed, plaintiffs specifically state in their opposition to the motion to dismiss that they do not challenge defendants' "failure to protect" them from private violence or defendants' "failure to enforce a restraining order" they had against Randall.  Dckt. No. 89 at 17.

1    Finally, plaintiffs have not alleged, and do not appear to be able to allege beyond a

2    speculative level, that there was a substantial causal relationship between their complaints about

3    defendants and the defendants' alleged indifference to safety and failure to protect, and/or

4    alleged failure to provide police services, code enforcement services and political discourse with

5    elected representatives.  Indeed, plaintiffs contend that their initial complaints about defendants

6    (the predicate for their protected speech/First Amendment retaliation claim) asserted essentially

7    the same course of conduct that is now said to have been retaliation for the initial complaint; i..e

8    defendants' failures to protect them, defendants' indifference to their safety, and defendants'

9    failure to provide them with services.  The logic appears to be that plaintiffs complained that

10   they were in someway threatened and, in spite of that complaint, the defendants did nothing to

11   protect them.  After the complaint was made, defendants continued to do nothing to protect

12   them.  Therefore, the failure to protect is retaliation for the protected speech complaining about

13   the failure to protect.  The syllogism is a non-sequitur.  Plaintiffs have not alleged discrete facts

14   demonstrating that defendants retaliated against plaintiffs (either by a failure to protect against a

15   known and genuine danger, or otherwise) because the plaintiffs had exercised their first

16   amendment rights.

17   This is now their third amended complaint and plaintiffs still have not been able to allege

18   facts demonstrating a First Amendment claim.  The prior dismissal order was clear that leave to

19   amend would granted "one final time."  Dckt. No. 78 at 2.  Despite plaintiffs' best efforts, the

20   current complaint fails to state a claim on this basis.  Accordingly, defendants' motion to dismiss

21   the First Amendment claim must be granted without further leave to amend.

22                         2.  Conspiracy (Second Claim; Against Neves, Bauman, and Does)

23   Defendants Neves and Bauman move to dismiss plaintiffs' conspiracy claim, arguing that

24   the claim is barred by the March 19, 2010 order and, even if not barred, fails to set forth facts

25   sufficient to support a claim upon which relief can be granted.  Dckt. No. 83-1 at 4-5.

26   ////

1    Defendants argue that plaintiffs' conspiracy claim "is based on an asserted conspiracy to both

2    obstruct justice and fail to abstain from injuring them in violation of the First and Fourteenth

3    Amendments," *id.* (citing TAC ¶¶ 76-80), and "involves nothing more than a re-labeling of their

4    earlier Fourteenth Amendment due process claim already ordered dismissed for failing to state a

5    viable claim."  *Id.* (citing Dckt. No. 78).

6            Additionally, defendants argue that plaintiffs' conspiracy claims are not viable.  *Id.* at 5.

7    Defendants argue that "[a]bsence of a deprivation of rights under 42 U.S.C. § 1983 precludes a

8    claim of conspiracy predicated on the same allegations," and that plaintiffs cannot establish any

9    constitutional violations by defendants.  *Id.* (citing *Caldeira v. County of Kauai*, 866 F.2nd 1175,

10   1182 (9th Cir. 1989)).  Their point appears to be that agreeing to do something that itself would

11   not deprive the plaintiff of federally protected right actionable under section 1983 cannot give

12   rise to conspiracy liability.  Specifically, defendants note that " under the First Amendment there

13   is no obligation on the part of government to listen or respond to the petitions raised by

14   individual citizens . . . ."  Dckt 83 at 5 (citing *Smith v. Arkansas,* 441 U.S. at 465).  It necessarily

15   follows that allegation of an agreement or conspiracy to do that very thing cannot state a claim.

16   Similarly, defendants note that "under the Due Process Clause there is no individual entitlement

17   to enforcement of a restraining order, plaintiffs cannot prevail for an alleged due process

18   violation arising from failure to enforce it."  *Id.* (citing *Town of Castle Rock, Colorado v.*

19   *Gonzales*, 545 U.S. 748, 756-758 (2005)).  Thus, merely alleging that two or more defendants

20   agreed to the same course of conduct (i.e., not enforcing the order) does not create a due process

21   right actionable under section 1983.

22           The February 19 F&Rs, which were adopted in full in the March 19 order, noted that

23   "[t]hroughout the second amended complaint, plaintiffs allege a vast conspiracy among all of the

24   defendants to violate plaintiffs' constitutional rights, including plaintiffs' First Amendment right

25   to freedom of speech and to redress grievances, without retaliation, and their Fourteenth

26   Amendment rights to equal protection, due process, and the "protected property right of goodwill

and honest services."   Dckt. No. 75 at 13.  The F&Rs then went on to state that the second

amended complaint failed to set forth facts sufficient to support conclusions that defendants

engaged in a conspiracy to violate plaintiffs' rights based on their membership in any class, and

that therefore their conspiracy claim under 42 U.S.C. § 1985(3) failed.  *Id.*  The F&Rs also found

that plaintiffs' conspiracy claim under 18 U.S.C. § 241 was equally deficient, as were plaintiffs'

claims under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C.

§ 1962.  *Id.* at 14.  Finally, the F&Rs stated that "[t]o the extent that plaintiffs' complaint could

be construed as asserting a conspiracy claim pursuant to 42 U.S.C. § 1983, the complaint [did]

not contain[] sufficient facts."  *Id.*  The F&Rs recommended that plaintiff's conspiracy claims be

dismissed but that plaintiffs be given leave to amend "to the extent plaintiffs [could] allege

specific facts supporting a conspiracy claim pursuant to 42 U.S.C. § 1983."  *Id.*

Plaintiffs' attempt in the third amended complaint to assert a conspiracy claim does no

more than incorporate by reference the earlier allegations and add to them the conclusory

assertion that "the named defendants" "violated the aforementioned constitutional rights and

state law[ ] when they conspired to obstruct justice . . . and violated [state law] because the did

not abstain from injuring the person or property of the plaintiffs. . . ."  TAC ¶¶ 76-80.  Simply

incorporating earlier allegations, which themselves fail to state a claim, and adding to them the

conclusory assertion that it was all done under a conspiracy, does not state a claim for conspiracy

liability.

In opposition to the motion to dismiss, plaintiffs allege that "Bauman and Neves

conspired to deprive their equal protection rights when they disfavored them to do animus when

Bauman was caught lying to the Republican Party in an effort to deceive the party from

believing she was a bad politician."  Dckt. No. 89 at 19.  They also allege that Bauman and

Neves created an express policy, which they allege is evidenced by Exhibit A1 to plaintiffs' third

amended complaint, that "county officials inform state and county elected officials, State

employees, County employees that plaintiffs . . . intend to mislead officials because they [have

1    been] arrested [numerous times and are therefore] criminal defendants not to be trusted."  *Id.*

2    Plaintiffs contend that because the exhibits attached to plaintiff's third amended complaint,

3    Exhibits A1, A2, and A3, "are a direct causal link that show that Neves conspired with Bauman,

4    both with 'final policy making authority,' and many others named in the exhibits, and because a

5    witness and possible Doe, Brenda Bailey corroborates and explains this conspiracy, these are

6    plausible facts."  Dckt. No. 89 at 13.

7        A conspiracy claim under 42 U.S.C. § 1983 requires proof of "'an agreement or meeting

8    of the minds to violate constitutional rights,'" *Franklin v. Fox*, 312 F.3d 423, 441 (9th Cir. 2001)

9    (quoting *United Steel Workers of Am. v. Phelps Dodge Corp*., 865 F.2d 1539, 1540-41 (9th Cir.

10   1989) (citation omitted)), and an actual deprivation of constitutional rights, *Hart v. Parks*, 450

11   F.3d 1059, 1071 (9th Cir. 2006) (quoting *Woodrum v. Woodward County, Okla*., 866 F.2d 1121,

12   1126 (9th Cir. 1989)).  "'To be liable, each participant in the conspiracy need not know the exact

13   details of the plan, but each participant must at least share the common objective of the

14   conspiracy.'"  *Franklin*, 312 F.3d at 441 (quoting *United Steel Workers*, 865 F.2d at 1541).  For

15   a complaint to state a claim under such a theory it must alleges discrete facts demonstrating each

16   of those element.  The Supreme Court has admonished that conclusory facts will not suffice.

17   *Iqbal*, 129 S. Ct. at 1949-50.

18       Plaintiffs, in their third amended complaint, once again fail to articulate sufficient facts to

19   support allegations of a conspiracy, relying instead on conclusory statements that a conspiracy

20   existed.  As discussed above, the emails attached to plaintiffs' third amended complaint as

21   Exhibits A1 and A2 do not say what plaintiffs contend they say and do not support plaintiffs'

22   allegations that defendants conspired to violate plaintiffs' constitutional rights.  *See Hal Roach*

23   *Studios, Inc.*, 896 F.2d at 1555 n.19.  Moreover, as discussed herein, plaintiffs have not

24   adequately alleged, and cannot allege, any actual deprivations or agreements to do things that

25   would constitute actual deprivations of their federally protected rights.  Because plaintiffs' third

26   amended complaint fails to state a claim for conspiracy that is plausible on its face, plaintiffs'

conspiracy claim must be dismissed without further leave to amend.

3.  Section 1983 Against Supervisory Defendants (Third Claim; Against Does)

Plaintiffs' third claim for relief is not alleged again any of the named defendants. Additionally, although it alleges "supervisory liability" under 42 U.S.C. § 1983, it does not contain a specific substantive cause of action.  *See Albright v. Oliver*, 510 U.S. 266, 271 (1994) ("Section 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'") (quoting *Baker v. McCollan*, 443 U.S. 137, 144, n.3 (1979)).  Moreover, plaintiffs' supervisory liability claims against the named defendants are set forth in claims four and five, as discussed below.  Therefore, plaintiffs' third claim for relief should be dismissed as superfluous and failing to state a claim.

4.  Section 1983 Based on Acts of Final Policymakers (Fourth Claim; Against Neves and Bauman)

Although it is unclear precisely what plaintiffs' fourth claim alleges, defendants Neves and Bauman argue that plaintiffs' fourth claim for entity liability against policymakers should be dismissed because it fails to set forth facts to support a claim upon which relief can be granted. Dckt. No. 83-1 at 5-6.  Specifically, defendants contend that plaintiffs' fourth claim alleges that defendants Neves and Bauman were elected officials who were the final policymakers implementing unconstitutional policies supporting the failure to investigate crimes and/or failure to enforce laws and/or failure to enforce restraining orders.  *Id.* (citing TAC ¶¶ 87-93). Defendants argue, however, that "[l]ocal government officials acting in their official capacity can only be sued if allegedly unconstitutional actions took place pursuant to some policy statement, ordinance, or decision officially adopted and promulgated by that body's officers, i.e. only when an unconstitutional municipal policy existed and action pursuant to an official municipal policy of some nature caused a constitutional tort."  *Id.* (citing *Haugen v. Brosseau*, 351 F.3d 372, 393 (9th Cir. 2003)).  Defendants contend that "it is not unconstitutional for a governmental entity or official to take no action to enforce a restraining order or otherwise

enforce the criminal statutes against every purported violation," and that therefore, "any policy not to enforce restraining orders or to otherwise not enforce laws is not unconstitutional." *Id.* Accordingly, defendants argue, "[c]laims of entity liability based upon policies related to inaction related to enforcement of restraining orders or other laws are not viable and must be dismissed." *Id.*

The February 19 F&Rs explained that plaintiffs' § 1983 claims against defendants El Dorado County and Neves, which were based solely upon respondeat superior liability for alleged wrongs by employees and others, are expressly barred by *Monell v. Department of Social Services*, 436 U.S. 658, 690-91 (1978). Dckt. No. 75 at 15. As stated in the F&Rs, a plaintiff cannot state a § 1983 claim against a municipal defendant unless he alleges that the municipal defendant maintained a policy or custom pertinent to the plaintiff's alleged injury and explains how such policy or custom caused his injury. *Sadoski v. Mosley*, 435 F.3d 1076, 1080 (9th Cir. 2006) (affirming dismissal of a municipal defendant pursuant to Rule 12(b)(6)). Additionally, federal claims against municipal defendants in their official capacity must also identify their specific policies and practices, because an official capacity suit against a municipal defendant in his official capacity is nothing more than suit against the County itself. *McMillian v. Monroe County, Ala.*, 520 U.S. 781, 785 n.2 (1997).

An actionable policy or custom is demonstrated by: (1) an "express policy that, when enforced, causes a constitutional deprivation," *Baxter v. Vigo County School Corp.*, 26 F.3d 728, 735 (7th Cir.1994); (2) a "widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled to constitute a 'custom or usage' with the force of law," *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988) (plurality opinion); or (3) constitutional injury caused by a person with "final policymaking authority," *Praprotnik*, 485 U.S. at 123.

Plaintiffs' third amended complaint alleges that "Bauman and Neves created an express policy contained in Exhibit A1, inter alia, that focused on meetings state and county wide,

16

according to the exhibit, to bar plaintiffs from constitutional rights by disfavoring them."  Dckt.
No. 89 at 19; TAC ¶¶ 30, 33, 65, 91.  They also allege that defendants had a policy that "county
officials inform state and county elected officials, State employees, County employees that
plaintiffs . . . intend to mislead officials because they [have been] arrested [numerous times and
are therefore] criminal defendants not to be trusted."  Dckt. No. 89 at 19.  Plaintiffs contend that
the policy is found in Exhibits A1, A2, and A3, which are attached to plaintiffs' third amended
complaint, and allege that defendants "ratified the policy expressed [therein]."  Dckt. No. 89 at
14; TAC ¶ 33.

Here, plaintiffs' § 1983 supervisory liability claims against defendants fail because
plaintiffs have not alleged facts showing that defendants had any policy or practice that caused
plaintiffs to suffer a constitutional deprivation.  As discussed herein, the policies of which
plaintiffs complain do not amount to a violation of plaintiffs' First or Fourteenth Amendment
rights.  Nor have defendants adequately alleged a constitutional injury caused by a person with
"final policymaking authority," as discussed herein.  Therefore, plaintiffs' supervisory liability
§ 1983 claims against defendants must be dismissed.

### 5.  Equal Protection Clause (Fifth Claim; Against All Defendants)

Defendants also move to dismiss plaintiffs' § 1983 claim for violation of the Equal
Protection Clause on the grounds that the claim is barred by the March 19 order and, even if not
barred, fails to set forth facts to support a claim upon which relief can be granted.  Dckt. No. 83-
1 at 6-7.  Defendants argue the claim is barred by the portion of the March 19 order dismissing
plaintiffs' Fourteenth Amendment claims with prejudice.  *Id.* (citing Dckt. No. 78).
Additionally, defendants argue that the allegations in the third amended complaint are
insufficient to state an Equal Protection claim since plaintiffs have not asserted that they are
members of a Constitutionally protected class, nor that they were treated differently from any
other class of persons.  *Id.*

////

1    Plaintiffs contend that "Bauman and Neves conspired to deprive their equal protection

2    rights when they disfavored them to do animus when Bauman was caught lying to the

3    Republican Party in an effort to deceive the party from believing she was a bad politician."

4    Dckt. No. 89 at 19.  Plaintiffs contend that "the county was disfavoring them" and that they were

5    "discriminated against as [a] class of one citizen due to purposeful vindictive animus."  Dckt.

6    No. 89 at 3, 4.  Plaintiffs contend that Bauman "create[d] false arrest reports for plaintiffs,"

7    unlike other similarly situated persons, and that "the defendants' motive and vindictive animus

8    out of [sheer] malice to act irrationally and disfavor plaintiffs by denying services based upon

9    discrimination between 'class of one' citizens who are protected."  *Id.* at 6, 12.  Plaintiffs allege

10   that "they were treated differently tha[n] similarly situated people and that there is no rational

11   basis."  *Id.* at 13.

12       "The Equal Protection Clause of the Fourteenth Amendment commands that no State

13   shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is

14   essentially a direction that all persons similarly situated should be treated alike."  *City of*

15   *Cleburne v. Cleburne Living Center*, 473 U.S. 432, 439 (1985) (quoting *Plyler v. Doe*, 457 U.S.

16   202, 216 (1982)).  Where state action does not implicate a fundamental right or a suspect

17   classification, a plaintiff can establish an equal protection "class of one" claim by demonstrating

18   that he "'has been intentionally treated differently from others similarly situated and that there is

19   no rational basis for the difference in treatment.'"  *Squaw Valley Development Co. v. Goldberg*,

20   375 F.3d 936, 944 (9th Cir. 2004) (quoting *Village of Willowbrook v. Olech*, 528 U.S. 562, 564

21   (2000) (per curiam)), *overruled on other grounds*, *Action Apt. Ass'n v. Santa Monica Rent*

22   *Control Bd.*, 509 F.3d 1020, 1025 (9th Cir. 2007).

23       In *Engquist v. Oregon Dep't of Agric.*, the Supreme Court noted, however, that class of

24   one equal protection claims are only appropriate when the differential treatment resulted from a

25   non-discretionary state action.  *Engquist*, 553 U.S. 591, 603 (2008).  The Court declined to apply

26   the "class of one" doctrine to the public employment setting, reasoning that:

> There are some forms of state action, however, which by their nature involve discretionary decisionmaking based on a vast array of subjective, individualized assessments. In such cases the rule that people should be "treated alike, under like circumstances and conditions" is not violated when one person is treated differently from others, because treating like individuals differently is an accepted consequence of the discretion granted.  In such situations, allowing a challenge based on the arbitrary singling out of a particular person would undermine the very discretion that such state officials are entrusted to exercise.

*Id*. at 603.  Although the Court in *Engquist* noted that "[t]his principle applies most clearly in the employment context," *id.*, numerous courts have applied *Engquist* to bar "class of one" claims in connection with discretionary decisions made outside the government-employee context.  *See, e.g., Flowers v. City of Minneapolis*, 558 F.3d 794, 799-800 (8th Cir. 2009) (applying *Engquist*'s reasoning to conclude "that while a police officer's investigative decisions remain subject to traditional class-based equal protection analysis, they may not be attacked in a class-of-one equal protection claim"); *United States v. Moore*, 543 F.3d 891, 901 (7th Cir. 2008) (applying *Engquist* to challenges to decisions of prosecutorial discretion and noting "a class-of-one equal protection challenge, at least where premised solely on arbitrariness/irrationality, is just as much a 'poor fit' in the prosecutorial discretion context as in the public employment context"); *Adams v. Meloy*, 287 Fed. App'x 531, 534 (7th Cir. 2008) (citing *Engquist* and determining that "class of one" claim against parole board had no merit because, inter alia, "[t]he parole board's inherent discretion necessitates that some prisoners will receive more favorable treatment than others"); *Tarantino v. City of Hornell*, 2009 WL 1384983, at *11 & n.11, (W.D.N.Y. May 28, 2009) (applying *Engquist* to enforcement of town code provisions because of the degree of discretion involved).

   Here, once again, it is unclear precisely what conduct by what specific defendant(s) plaintiffs contend violated their equal protection rights.  Plaintiffs appear to contend that defendants' failure to provide them with police services, code enforcement services, and access to their political representatives in a non-discriminatory way *and* defendants' alleged false

1    statements regarding plaintiffs' arrest, all violated their right to equal protection.  Therefore, it is

2    difficult to determine whether *Engquist* should bar plaintiffs' "class of one" claim as one

3    challenging a discretionary decision.  *See, e.g., Cain v. Tigard-Tualatin School Dist. 23J*, 262 F.

4    Supp.2d 1120 (D. Or. 2003).  Nonetheless, even if plaintiffs are entitled to bring a "class of one"

5    equal protection claim, that claim fails under each of the theories identified above.

6           The allegation that defendants made false statements regarding plaintiffs' arrest in

7    violation of plaintiffs' equal protection rights, as discussed above, is contradicted by the exhibits

8    attached to plaintiffs' complaint.  Those exhibits are directly contrary to plaintiffs' allegation

9    that the named defendants were responsible for the false statements regarding plaintiffs' arrest.

10   Therefore, the named defendants cannot have violated plaintiffs' equal protection rights as a

11   result of that conduct.  Moreover, plaintiffs have not alleged, beyond mere conclusions, that

12   other similarly situated persons were treated differently than plaintiffs.  "As to the different

13   treatment element, a plaintiff must demonstrate that 'the level of similarity between plaintiff and

14   the persons with whom they compare themselves must be extremely high.'"  *Wilson v. City of*

15   *Fresno*, 2009 WL 3233879, at *7 (E.D. Cal. Oct. 2, 2009) (quoting *Neilson v. D'Angelis*, 409

16   F.3d 100, 104 (2d Cir. 2005).  To succeed, plaintiffs must allege and ultimately prove facts that

17   "demonstrate that they were treated differently than someone who is prima facie identical in all

18   relevant respects."  *Purze v. Village of Winthrop Harbor*, 286 F.3d 452, 455 (7th Cir. 2002); *see*

19   *also King v. New York State Div. of Parole*, 260 Fed. App'x. 375, 379-80 (2d Cir. 2008) (finding

20   that because plaintiff "failed to identify a single individual with whom he can be compared for

21   Equal Protection purposes," his class of one equal protection claim was properly dismissed).

22   Plaintiffs have not done so and their mere conclusory allegation fails to satisfy the pleading

23   requirements of *Iqbal*.

24          Additionally, with regard to plaintiffs' allegation that defendants failed to provide them

25   with police services, code enforcement services, and access to their political representatives in a

26   non-discriminatory way, plaintiffs have not alleged, beyond a speculative level, that other

1   similarly situated persons were provided greater access to police services, code enforcement

2   services, or to their political representatives in a non-discriminatory way or that defendants

3   intentionally treated plaintiffs differently than other similarly situated persons.  *See, e.g., Paul v.*

4   *City of Sunnyside*, 2010 WL 5034159, at *1 (9th Cir. Dec. 8, 2010) (finding that summary

5   judgment for defendants was proper on plaintiff's equal protection claim against them because

6   plaintiff, who was seeking to bring his claim as a "class of one," failed to provide evidence that

7   the defendant public officials intentionally treated the plaintiff differently from others similarly

8   situated).

9          Moreover, plaintiffs have not adequately alleged that there was no other rational basis for

10  either the false accusation regarding plaintiffs' arrest or the alleged inferior provision of police

11  services, code enforcement services, and access to political representatives.  "To prevail on the

12  rational basis element, a 'class of one' plaintiff must 'negative any reasonably conceivable state

13  of facts that could provide a rational basis for the classification.'"  *Wilson*, 2009 WL 3233879, at

14  *8 (quoting *Lauth*, 424 F.3d 631, 634 (7th Cir. 2005)).  The "rational-basis inquiry is a very

15  lenient one, and specifically 'attach[es no] legal significance to the timing' of legislative or

16  municipal action."  *RUI One Corp. v. City of Berkeley*, 371 F.3d 1137, 1156 (9th Cir. 2004)

17  (quoting *Bannum, Inc. v. City of Fort Lauderdale*, 157 F.3d 819, 822, n.3 (11th Cir.1998)).

18  "*Olech* does not empower federal courts to review government actions for correctness.  Rather,

19  an *Olech*-type equal protection claim focuses on whether the official's conduct was rationally

20  related to the accomplishment of the work of their agency."  *Bizzarro v. Miranda*, 394 F.3d 82,

21  88-89 (2nd Cir. 2005).  A decision "can be considered irrational" only when the decision-maker

22  "acts with no legitimate reason for its decision."  *Harlen v. Associates v. Incorporate Village of*

23  *Mineola*, 273 F.3d 494, 500 (2nd Cir. 2001) (quotation marks and citation omitted).  Here,

24  plaintiffs have not met that burden and, after multiple failed attempts to do so, apparently are

25  unable to do so.

26  ////

1    Accordingly, defendants' motion to dismiss plaintiffs' § 1983 equal protection claim

2  must be granted.

3            6.  State Law Claims

4    Plaintiffs also assert four supplemental state law claims: breach of fiduciary duty, libel

5  per se, negligence, and tortious interference.  Although defendants move to dismiss each of these

6  claims on the merits, because the federal question claims must be dismissed, it is appropriate to

7  decline supplemental jurisdiction over the four state law claims.

8    A district court may decline to exercise supplemental jurisdiction over state law claims

9  when it has "dismissed all claims over which it has original jurisdiction. . . ."  28 U.S.C.

10  § 1367(c).  Indeed, "[n]eedless decisions of state law should be avoided both as a matter of

11  comity and to promote justice between the parties, by procuring for them a surer-footed reading

12  of the applicable law."  *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 726 (1966).  In

13  deciding whether to dismiss the state law claims, the court must consider "the values of

14  economy, convenience, fairness and comity."  *Carnegie-Mellon University v. Cohill*, 484 U.S.

15  343, 350 (1988).  Here, although this court has a lengthy history of reviewing plaintiffs'

16  complaints and addressing plaintiffs' claims, the majority of this court's focus has been on

17  plaintiffs' federal claims.  Plaintiffs' remaining state law claims all involve questions of

18  substantive California law and California immunities.  Therefore, they are subject to proof by

19  reference to elements and standards which are distinct from federal law, and are better suited for

20  the California courts.  Accordingly, the court finds that plaintiffs' claims arising under state law

21  should be dismissed pursuant to 28 U.S.C. § 1367(c).

22  III.    RECUSAL MOTIONS

23    Plaintiffs move for the undersigned and Judge England to recuse themselves from this

24  case.  Dckt. Nos. 85, 88.  Plaintiffs argue, *inter alia*, that the undersigned and Judge England

25  ignored plaintiffs' constitutional rights and acted arbitrarily and capriciously in dismissing

26  plaintiff's second amended complaint.  *Id.*

1   As an initial point, this action has been reassigned from Judge England to a new district

2   judge.  Therefore, the motion to recuse Judge England is moot.  Further, plaintiffs have not

3   shown that recusal by either Judge England or the undersigned is appropriate.

4   The applicable recusal statute, 28 U.S.C. § 455, provides that "[a]ny justice, judge, or

5   magistrate judge of the United States shall disqualify himself in any proceeding in which his

6   impartiality might reasonably be questioned."  28 U.S.C. § 455(a).  He shall also disqualify

7   himself when he has "a personal bias or prejudice concerning a party . . . ."  *Id.* § 455(b)(1).

8   Although a judge must recuse himself in those circumstances, he must not simply recuse out of

9   an abundance of caution when the facts do not warrant recusal.  Rather, there is an equally

10   compelling obligation not to recuse where recusal in not appropriate.  *See United States v.*

11   *Holland*, 519 F.3d 909, 912 (9th Cir. 2008) ("We are as bound to recuse ourselves when the law

12   and facts require as we are to hear cases when there is no reasonable factual basis for recusal.").

13   Here, plaintiffs have not shown any basis upon which the undersigned should recuse.

14   They have not shown that his impartiality could reasonably be questioned or that he has any

15   personal bias or prejudice toward plaintiffs.  To the contrary, it appears that plaintiffs seek the

16   undersigned's recusal because plaintiffs are dissatisfied with the rulings thus far in this action.

17   However, the obligation not to recuse is perhaps at its highest when the motion has been brought

18   after the party seeking recusal has sustained an adverse ruling in the course of the action.

19   "Granting a motion to recuse many months after an action has been filed wastes judicial

20   resources and encourages manipulation of the judicial process."  *Willner v. University of Kansas*,

21   848 F.2d 1023, 1029 (10th Cir. 1988); *see also In re Int'l Business Machines Corp.*, 618 F.2d

22   923, 932-33 (2d Cir. 1980); *Apple v. Jewish Hosp. and Medical Center*, 829 F.2d 326 (2d Cir.

23   1987) (although § 455 does not contain an explicit timeliness requirement, timeliness has been

24   read into the section); *Singer v. Wadman*, 745 F.2d 606, 608 (10th Cir. 1984) (recusal motion

25   was untimely where it was filed a year after the complaint was filed and after the appellants had

26   suffered some adverse rulings on interlocutory matters).  Simply stated, a judge must take care

not to recuse out of an abundance of caution when it appears that a party may be seeking recusal out of dissatisfaction after sustaining adverse rulings.  *See In re United States*, 441 F.3d 44, 67 (1st Cir. 2006) ("[A]n appellate court has no wish to encourage strategic moves by a disgruntled party to remove a judge whose rulings the party dislikes. '[T]he disqualification decision must reflect not only the need to secure public confidence through proceedings that appear impartial, but also the need to prevent parties from too easily obtaining the disqualification of a judge, thereby potentially manipulating the system for strategic reasons, perhaps to obtain a judge more to their liking.").  Because plaintiffs' recusal motion is based solely upon the contention that they disagree with the manner in which earlier motions in this case have been decided, the recusal motion should be denied.

IV.   CONCLUSION

As note above, plaintiffs have now filed a third amended complaint and still have not been able to allege specific facts demonstrating a cause of action.  The court's prior order was clearly stated that leave to amend would granted "one final time."  Dckt. No. 78 at 2.  The third amended complaint nonetheless fails to state a claim.  Accordingly, defendants' motion to dismiss must be granted without further leave to amend.

For the foregoing reasons IT IS HEREBY RECOMMENDED that:

1.  Defendants Jeff Neves, County of El Dorado, and Helen Bauman's motion to dismiss plaintiff's third amended complaint, Dckt. No. 83, be granted;

2.  Plaintiffs' motion for recusal, Dckt. No. 85, be denied;

3.  Plaintiffs' motions to strike defendants' motion to dismiss, Dckt. Nos. 86 and 90, be denied; and

4.  The Clerk be directed to close this case.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days after being served with these findings and recommendations, any party may file written

objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections shall be filed within seven days after service of the objections.  Failure to file objections within the specified time may waive the right to appeal the District Court's order. *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

DATED:  March 1, 2011.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE